UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JEFFREY SCHLOSSER,                    :
    Petitioner,                         :
                                        :
    v.                                  :     Case No. 3:22-cv-1620 (VLB)
                                        :
ANGEL QUIROS,                         :
    Respondent.                         :

## RULING ON MOTION TO DISMISS

Petitioner Jeffrey Schlosser is an inmate incarcerated at the Connecticut Department of Correction ("DOC") at MacDougall-Walker Correctional Institution. On December 15, 2022, he commenced this action for a Writ of Habeas Corpus under 28 U.S.C. § 2254 against Governor Lamont and Attorney General Tong.  Pet., Doc. No. 1.  On April 19, 2023, the Court denied this Petition without prejudice because Petitioner had not named proper respondents for his action under section 2254. Order, Doc. No. 15.  The Court advised Petitioner that he "may re-apply for a writ of habeas corpus in this case within 35 days of this order naming the person who has custody over him, who again is the warden of the prison where he is held" and ordered him to submit his petition on this District's application form.  *Id.*  The Court noted, "The application form asks key questions that go to this Court's jurisdiction to adjudicate this action."  *Id.*

On May 11, 2023, Petitioner filed his Amended Petition against DOC Commissioner Quiros.  Am. Pet., Doc. No. 17.  In it, he challenges his state criminal conviction on grounds of (1) a violation of the psychiatrist-patient privilege without a court hearing; (2) the state court judge's reliance on inaccurate information; (3) a violation of federal confidentiality statutes and that his sentence constituted a

breach of a plea agreement; and (4) a warrant defect, false imprisonment denial of court access, and a complaint about Court Support Services Division employees' not being healthcare workers.  *Id.*

Respondent moves to dismiss the Petition on the basis of Petitioner's failure to exhaust his state court remedies.   Mot. to Dis., Doc. No. 28.  Petitioner filed his response (doc. no. 31), a letter (doc. no. 32), and a declaration that appear to be filed in further support of his amended petition (doc. no. 33).  Upon thorough review of the record, the Court GRANTS Respondent's motion to dismiss.

I.    BACKGROUND

On September 27, 2012, Petitioner pleaded guilty to charges in two Connecticut criminal dockets.  With respect to docket number H-14H-CR-11-0236734-T, he pleaded guilty to  Risk of Injury to a Child in violation of Connecticut General Statutes § 53-21(a)(1).  As for docket number H-14H-CR12-0237931-T, he pleaded guilty to Sexual Assault in the Fourth Degree in violation of Conn. Gen. Stat. § 53a-73a, and Illegal Sexual Contact with a Victim under Sixteen Years of Age in violation of Connecticut General Statutes § 53-21(a)(2).    Resp't App'x A (Appellate Brief) at 8, Doc. No. 29-1.[1]  For his convictions, Petitioner received a total effective sentence of ten years of incarceration, suspended after 30 months, followed by ten years of probation.  *Id.*

---

[1] The Court cites to the ECF page numbers.

### First Probation Violations

On April 17, 2017, Petitioner appeared before the state superior court in response to probation violation charges lodged in both cases. *Id.* at 9. Petitioner admitted to his probation violation charges and the judge imposed a new total effective sentence of seven and half years of incarceration, suspended after one year followed by 6.5 years of probation with conditions. *Id.* at 9.

### Second Probation Violations

On October 30, 2018, Petitioner was again arrested for violations of his probation. *Id.* at 9-10. On January 15, 2020, the date of his hearing for his probation violations, the parties informed the court that they had reached a proposed resolution of Petitioner's charges. Resp't App'x B (Hr'g Tr.) at 4, Doc. No. 29-2. The judge explained the following as to the disposition of Petitioner's charges:

> The parties at a brief sidebar just a moment ago informed the Court that they had come to an agreement. Under these circumstances the Court has indicated that if the defendant wishes to admit the second violation of each probation, we could move to sentencing but there would be no agreement. This would be an open recommendation. The State and Defense may well jointly propose a certain disposition but it would be up to this Court, which is now on the date of the violation of probation hearing, being asked to impose an agreed-upon sentence.

*Id.* The court then queried whether Petitioner was aware that: (1) he had an exposure of 6.5 years in jail for his probation violations if he admitted to his charges; (2) the court was prepared to undertake a violation of probation hearing which would afford him an opportunity to present a defense; and (3) the State's burden of proof was the "preponderance of the evidence" standard. *Id.* at 4-6.

3

Petitioner confirmed that he was aware of these facts but wanted to proceed to his sentencing after admitting to his violations.  *Id.* at 6.

After Petitioner admitted the charges, the State's Attorney set forth Petitioner's violation conduct, including his referrals for substance abuse treatment; his emergency room admission where he obtained medication he had been told not to take; his difficulties working with his probation officer and recommended treatments; and, finally, his discharge from his Continuing Care Clinic program on June 1, 2018 for failure to attend.  *Id.* at 7-9.  The State's Attorney explained that a "probation warrant was sought" after several failed attempts to help Petitioner comply.  *Id.* at 9.

The judge then proceeded to canvass Petitioner.  *See id.* at 10-11.  Petitioner indicated that his attorney had explained to him (1) "all the rights to a violation of probation hearing" that he was relinquishing by admitting to the violations; (2) the evidence that the State said it had against him and what the State would have to prove to have him found in violation of his probation; and (3) and the maximum penalty he could receive.  *Id.* at 10.  In response to the Court's question about whether he "basically" agreed to the State's representation about his violation conduct, Petitioner stated:  "I don't agree with it but it's what, you know, I'll accept it."  *Id.*  He agreed that he had violated his probation, that no one had threatened or forced him to admit to the probation violations, and that he was admitting to them under his own free will.  *Id.* at 10-11.  He also stated that he understood that

4

once the court accepted his admissions, he could not take them back without permission from the court.  *Id.* at 11.

After summarizing Petitioner's underlying conduct for his original offenses in each case, the State's Attorney recommended a three-year sentence for Petitioner's second probation violation.  *Id.* at 13-14.  Petitioner's counsel also agreed that a three-year sentence was appropriate given Petitioner's "mental health and all of the circumstances concerning his mental health[.]"  *Id.* at 15. Petitioner's counsel noted Petitioner had not "reoffended in the capacity of the original charges" and did not believe he was likely to do so.  *Id.*

After confirming that neither counsel had anything further to add, the judge asked Petitioner if he would like to say anything with respect to his sentencing.  *Id.* at 17.  Petitioner requested credit for his jail time from the date of his arrest to the date of the hearing.  *Id.*  The judge indicated that he would order credit for Petitioner's pretrial confinement commencing on October 30, 2018.  *Id.* at 18.

Prior to imposing the sentence, the judge noted the information he reviewed in preparation for the hearing and stated that he believed there was a risk that Plaintiff would sexually assault another child.  *Id.* at 20.  The judge stated:

> Okay, so page three of seven [of the probation warrant] that causes the Court concern when it sees with respect to the December 1, 2017 date that the Probation Officer alleges that they told the defendant that he would not be allowed to switch providers, and that Mr. Schlosser is accused of storming out of his office and telling the officer that he would "do what he wants."  He was then two weeks later placed on zero tolerance by Probation and it says that Mr. Schlosser refused to sign the acknowledgement that he was on zero tolerance. It then goes on to explain that further non-compliance which even included failure to comply with treatment recommendations, failure to show

up for groups on numerous dates . . . several sessions of individual therapy and failure to report for medication management.  So that makes it clear to the Court that that level of non-compliance would continue if the Court were to have Mr. Schlosser return to probation.  In that, the Court finds that there is, that the defendant, Mr. Schlosser, is no longer amenable to probation and the Court finds that as argued by the State, that the rehabilitative purposes of his sentences, or . . . that probation has exhausted its attempts at rehabilitating the defendant and that that leaves punishment as the only reasonable purpose of the Court sentence.

*Id.* at 20-21.  The court revoked Petitioner's probation and imposed less than the maximum sentence of a total effective sentence of five years with credit for pretrial incarceration from October 30, 2018.  *Id.* at 22; *see also State v. Schlosser*, 211 Conn. App. 143, 145, *cert. denied*, 343 Conn. 923 (2022).

<u>Direct Appeal of Second Probation Violations' Judgment</u>

Petitioner appealed from the judgment of the trial court on his second probation violations on the ground that the judge committed plain error and caused him to enter an involuntary plea by failing "to expressly inform [him] of his right to maintain his not guilty plea after the court had rejected the parties' agreed-upon plea agreement[.]"  Resp't App'x A at 3; *see also State v. Schlosser*, 211 Conn. App. at 145–46 (stating "defendant claims that his admission was not knowing and voluntary because the court failed to explicitly inform him of his right to maintain a denial of violation of his probation").

After review, the Connecticut Appellate Court ruled that the superior court record—including "the court's comprehensive canvass"—reflected that Petitioner's admission was "knowing and voluntary," that Petitioner's prior experience at his underlying criminal trial and prior probation violation "supports

**6**

the inference that his admission in the case was knowingly and voluntarily made," and that Petitioner "was afforded and was prepared to exercise his right to a contested hearing[.]" *Id.* at 151–52. Thus, the Appellate Court ruled that Petitioner's "specific claim that his admission was not knowing and voluntary must fail." *Id.* at 152. On May 24, 2022, the Connecticut Supreme Court denied Petitioner's petition for discretionary review. *State v. Schlosser*, 343 Conn. 923 (2022).

### Motion to Correct Illegal Sentence

In addition to his direct appeal, in June 2021, Petitioner filed a motion to correct illegal sentence on the ground that the judge based it on inaccurate information. *See* Resp't App'x C at 1, Doc. No. 29-3. On March 21, 2022, the superior court rejected Petitioner's motion to correct. *Id.* The court first ruled that it lacked subject matter jurisdiction over Petitioner's challenge to the accuracy of factual basis for his guilty plea. *Id.* at 7. The court explained further that even if it did have jurisdiction, Petitioner had not sustained his burden to show that the judge imposed his sentence on the basis of inaccurate information. *Id.* at 8.[2]

---

[2] Respondent represents that Petitioner has another motion to correct illegal sentence and a motion for sentence modification pending. Resp't. Mem. at 7, Doc. No. 29.

## Other Legal Actions

Petitioner has also filed five other non-habeas legal actions against state actors in superior court.[3]

In the first case, Petitioner sued two public defenders for damages due to their improper disclosure of Petitioner's prior motor vehicle arrest that had been *nolled*. *See Schlosser v. Rapillo*, NNH-CV21-5050282. In the second case, Petitioner named thirty defendants, including the probation officers, State's Attorneys, public defenders and superior court judges involved with his convictions, seeking damages, release from incarceration for his illegal convictions for his probation and his sentences, and other equitable relief. *Schlosser v. Mendoza,* NNH-CV21-5050811. Petitioner filed a third case seeking damages and injunctive relief for alleged inadequate medical treatment while incarcerated by the DOC. *Schlosser v. Quiros*, NNH-CV21-5050493. Petitioner brought a fourth case against defendants who allegedly receive federal funding and maintain state contracts for, *inter alia*, civil rights violations, for conspiring with the state to subject him to illegal incarceration, defamation and breach of confidentiality. *Schlosser v. Fischer*, NNH-CV21-405945. Judgment was entered in this case on March 13, 2023. In a fifth case, he claimed denial of his right to inspect or have copies of his personal data and requested damages and an order for

[3] For each of the cited cases, the Court takes judicial notice of the case details on the publicly available website superior court case look up for civil cases. *See* https://civilinquiry.jud.ct.gov/.

production of records from Court Support Services and its employees. *Schlosser v. Court Support Servs. Div.*, NNH-CV21-5050040. This case was dismissed on August 7, 2023.

Petitioner has also filed three habeas petitions. The superior court declined to exercise jurisdiction to adjudicate two of his petitions, case numbers TSR-CV20-5000803-S and TSR-CV20-5000804-S.[4] In his third petition, Petitioner complained about his illegal conditions of confinement due to inadequate medical care provided during his incarceration. *Schlosser v. Comm'r of Corr.*, TSR-CV21-5000957-S. On August 1, 2022, judgment was entered for the respondent in this matter.

## II.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss a habeas petition, like any other motion to dismiss a civil complaint, is governed by Federal Rule of Civil Procedure 12(b)(6). *Spiegelmann v. Erfe*, No. 3:17-CV-2069 (VLB), 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018) (reviewing motion to dismiss § 2254 petition under Fed. R. Civ. P. 12(b)(6)). To survive dismissal, the petition must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "detailed factual allegations" are not required, a complaint

---

[4] Respondent represents that it cannot determine the grounds asserted in these petitions. Resp't Mem. at 15, Doc. No. 29.

must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57.

Because Petitioner filed the present petition *pro se*, the Court must construe his filings "liberally" and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). "Despite the special solicitude that the Court must show [Petitioner] out of consideration for his pro se status, his petition must still include sufficient factual allegations to meet the standard of facial plausibility to survive a motion to dismiss under Rule 12(b)(6)." *Anderson v. Williams*, No. 3:15-CV-1364 (VAB), 2017 WL 855795, at *6 (D. Conn. Mar. 3, 2017) (citation and internal quotation marks omitted).

In considering a motion to dismiss, the court typically may consider only the complaint, or, here, the petition.  However, the petition "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," as well as any documents deemed "integral" to the petition.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations and internal quotation marks omitted).  *See also Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) (explaining that, in considering a motion to dismiss, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint").

10

B.      Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the [AEDPA]." *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  Section 2254 permits a federal court to entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws.  28 U.S.C. § 2254(a).

Prior to the enactment of AEDPA on April 24, 1996, "there was no formal limit on the time for filing" a habeas petition in federal court.  *Ross v. Artuz*, 150 F.3d 97, 99 (2d Cir. 1998).  AEDPA "wrought a significant change" by subjecting a habeas petition challenging a state court conviction to a one-year limitations period.  *Id.*; 28 U.S.C. § 2244(d)(1).  The one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]"  28 U.S.C. § 2244(d)(1)(A).[5] This limitations period "serves the well-recognized interest in the finality of state court judgments" by "restricting the time that a prospective federal habeas petitioner

---

[5] In full, the AEDPA provides that the one-year period runs from the latest of: "(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1).  However, there is no claim here that any of the situations in (B)–(D) are applicable.

has in which to seek federal habeas review." *Duncan v. Walker*, 533 U.S. 167, 179 (2001).

However, the one-year limitation period applicable to post-AEDPA convictions may be tolled for the duration of post-conviction proceedings and other collateral review in state court.  Specifically, section 2244(d)(2) provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

C.    Exhaustion of State Court Remedies

Section 2254 provides that a federal court cannot grant habeas relief unless "(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1).

"The exhaustion doctrine recognizes that state courts, no less than federal courts, are bound to safeguard the federal rights of state criminal defendants." *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*).  Thus, "[t]he exhaustion requirement . . . serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981).  *See also Picard v. Connor*, 404 U.S. 270, 275 (1971) (noting that the purpose of the exhaustion doctrine is "to prevent unnecessary conflict

between courts equally bound to guard and protect rights secured by the Constitution" (citation and internal quotation marks omitted)).  "To provide the State with the necessary 'opportunity,' [to pass upon and correct an alleged violation of its prisoner's federal rights] the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation omitted).  *See also Picard*, 404 U.S. at 275 ("We emphasize that the federal claim must be fairly presented to the state courts.").

A petitioner's claims may be presented either on direct review or through state post-conviction proceedings—"a prisoner does not have 'to ask the state for collateral relief, based on the same evidence and issues already decided by direct review.'"  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) (quoting *Brown v. Allen*, 344 U.S. 443, 447 (1953)).  However, review by the highest court must be sought, even if such review is discretionary and unlikely to be granted, because the petitioner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one *complete* round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845 (emphasis added); *see* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has a right under the law of the State to raise, by any available procedure, the question presented.").

13

A petitioner only satisfies the exhaustion requirement if he presents the essential factual and legal bases of his federal claim to each appropriate state court, including the highest state court capable of reviewing it.  This allows the state courts the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (*per curiam*) (internal quotation marks and citation omitted); *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003) (exhaustion of state remedies requires a petitioner to present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.") (citations omitted).

However, a federal claim has only been fairly presented to the state courts if it "alert[s] that court to the federal nature of the claim."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal parentheses and quotation marks omitted).  A petitioner "does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief . . . that does not alert it to the presence of a federal claim in order to find material . . . that does so."  *Id.* at 32.  Thus, "the claim presented to the state court . . . must be the 'substantial equivalent' of the claim raised in the federal habeas petition."  *Jones v. Keane*, 329 F.3d 290, 295 (2d Cir. 2003) (citations omitted).

Failure to exhaust state court remedies may be excused only if "there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient to render futile any effort to obtain relief."  *Duckworth*, 454 U.S. at 3; 28 U.S.C. § 2254(b)(1)(B).  The petitioner may not, however, simply wait until appellate

14

remedies are no longer available and then argue that the claim is exhausted. *See Galdamez v. Keane*, 394 F.3d 68, 72–74 (2d Cir. 2005), *cert. denied*, 544 U.S. 1025 (2005).

In some instances, a federal habeas petition may be "mixed," meaning that it contains "both exhausted and unexhausted claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005). When presented with a mixed petition, a district court has discretion either to dismiss the petition in its entirety, or to stay the federal habeas proceeding to afford the petitioner an opportunity to exhaust his unexhausted claims in state court. *Id.* at 278–79; *Zarvela v. Artuz*, 254 F.3d 374, 380 (2d Cir. 2001). Staying the federal habeas proceeding is generally disfavored because it frustrates the objectives of the exhaustion requirement, and a stay is therefore available "only in limited circumstances." *Rhines*, 544 U.S. at 277.

III.   DISCUSSION

Respondent asserts that no grounds in Petitioner's federal Petition have been fairly presented to the state's highest court. Resp't Mem. at 13. Petitioner's direct appeal raised his claim that the superior court judge committed plain error and caused him an involuntary entry of a guilty plea by not informing him he had a right to maintain his plea of "not guilty." *See* App'x. A, Doc. No. 29-1. He did not raise any of the grounds for relief advanced in the instant section 2254 Petition.

Petitioner raised the issue of a sentencing error based on inaccurate information in his motion to correct illegal sentence filed in superior court, but he did not bring a further appeal after that motion was denied. *See* Resp't App'x C

(Decision on Motion to Correct Illegal Sentence) at 1-9.  Thus, it is clear that Petitioner failed to satisfy his exhaustion requirement by presenting all of the claims from his section 2254 Petition to each appropriate state court, including the highest state court capable of reviewing it.

Petitioner does not claim otherwise.  He argues that the Respondent filed the response to the show cause order one day after the court-ordered deadline of July 30, 2023.  Pet'r Reply at 4, Doc. No. 31; *see* Order, Doc. No. 26 (granting Respondent's motion for extension of response deadline to July 30, 2023).  But Respondent's procedural non-compliance does not excuse Petitioner's failure to satisfy his statutory obligation to exhaust his state court remedies.  *See* 28 U.S.C. § 2254(b)(1).

Petitioner appears to complain that Respondent's memorandum does not comply with the state Practice Book procedures.  Pet'r Reply at 4, Doc. No. 31. However, the Connecticut state Practice Book procedures are not relevant to whether Petitioner exhausted his state court remedies for this federal habeas action.

Petitioner's remaining arguments assert that he is being denied access to the courts for his pending motion to correct illegal sentence and his other state civil action, *Schlosser v. Mendoza*; that the Court Support Services Division subjected him to a breach of confidentiality and contract; and that he was subjected to conspiracies involving Respondent's counsel to deprive him of his rights.  *Id.* at 5–22.  Petitioner continues with a series of quotations that bear no

16

relevance to the issue of whether he has exhausted his state court remedies or should be excused from doing so.[6]  *Id.* at 23–47.   None of these arguments or material alter the fact that Petitioner failed to exhaust his remedies and has not shown that he should be excused from doing so.

Accordingly, the record clearly shows that Petitioner failed to exhaust his state court remedies, and there is no suggestion that he should be excused from his exhaustion obligation due to a lack of "opportunity to obtain state court redress" or a state court "corrective process is so clearly deficient to render futile any effort to obtain relief."  *See Duckworth*, 454 U.S. at 3; 28 U.S.C. § 2254(b)(1)(B).[7] As the Petition is fully unexhausted, it must be dismissed without prejudice.

IV.  **CONCLUSION**

For the foregoing reasons, Respondent's motion to dismiss [Doc. No. 28] is GRANTED.  Thus, the Petition [Doc. No. 17] is DISMISSED without prejudice.  The clerk is instructed to close this case.  Any appeal from this order would not be taken in good faith. Thus, a certificate of appealability will not issue.

_____
Vanessa L. Bryant
United States District Judge

SO ORDERED at Hartford, Connecticut this 6th day of November 2023.

---

[6] Likewise, Petitioner has attached exhibits that have no relevance to the issue of his exhaustion.  *See* Doc. No. 31-1 to 31-3.

[7] Neither his letter nor declaration filed after his reply address any issue relevant to his state court exhaustion for the grounds asserted in his habeas petition under section 2254. Pet'r Ltr, Doc. No. 32; Pet'r decl., Doc. No. 33.